UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| PETER J. DECONINCK, | ) ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) | Civil No. 19-11544-LTS |
| STEVEN SILVA, | ) ) ) | |
| Respondent. | ) ) | |

MEMORANDUM AND ORDER ON PETITION
FOR WRIT OF HABEAS CORPUS (DOC. NO. 1)

March 23, 2020

SOROKIN, J.

Peter J. Deconinck, a prisoner at the Massachusetts Correctional Institution in Norfolk, Massachusetts, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Doc. No. 1.[1] He asserts three claims of trial-court error. The respondent answered the petition and raised various affirmative defenses. Doc. No. 9. Because Deconinck failed to file a merits brief advancing his claims despite multiple extensions of the deadline for doing so, the Court did not require further submissions from the respondent. After review of the pleadings and the state-court record, Deconinck's petition is DENIED.

I.  BACKGROUND

In March 2016, a Suffolk County Superior Court jury convicted Deconinck of first-degree murder on a theory of extreme atrocity or cruelty; he received a life sentence.

---

[1] Citations to documents on the Court's electronic docket reference the assigned docket number and the page number appearing in the ECF header.

Commonwealth v. Deconinck, 103 N.E.3d 716, 718 (Mass. 2018); S.A. at 9.[2] The charges stemmed from the stabbing death of one of Deconinck's long-time friends, Ronald Russo, in August 2013. Deconinck, 103 N.E.3d at 718. Deconinck and Russo had consumed alcohol and controlled substances and argued inside the trailer where Russo was staying with John Fay, who witnessed the relevant events. Id. at 719-21. The argument turned physical, both Deconinck and Russo wielded knives, and Russo died after suffering sixty-nine knife wounds, three of which would have been independently fatal. Id. Deconinck suffered one knife wound to his leg and was arrested the same night. Id.

Fay gave a videotaped statement to police hours after the incident and testified before a grand jury, but he "died unexpectedly prior to trial." Id. at 720, 722. At trial, Deconinck unsuccessfully argued that Russo had been the first aggressor in the fight, forcing Deconinck to act in self-defense. Id. at 718, 725. He also offered evidence of his intoxication and the testimony of a neuropsychologist that he "suffered from impaired judgment and impulse control." Id. at 721. In the alternative, he urged that he was guilty of manslaughter, at most, for having used excessive force "in self-defense, sudden combat, or heat of passion." Id. at 718.

Deconinck appealed his conviction to the Supreme Judicial Court ("SJC"). S.A. at 9. In his direct appeal, Deconinck claimed: 1) that the trial court had erred in its rulings about the admissibility of Fay's statement to police; 2) that the trial court had abused its discretion in excluding evidence of certain prior acts of violence by Russo, which Deconinck sought to admit in support of his self-defense claim; 3) that his Due Process rights were violated due to the trial judge's failure to recuse herself and her evident bias against Deconinck's counsel during trial;

---

[2] The respondent has filed a Supplemental Answer (cited as "S.A.") containing the state-court record, which is in the possession of the Clerk's Office as part of the Court's file.

4) that the trial court erred in its response to a question from the jury during its deliberations; and 5) that the SJC should exercise its extraordinary power under state statute to order a new trial to remedy a miscarriage of justice. Deconinck, 103 N.E.3d at 722; S.A. at 15-16.

On August 10, 2018, the SJC affirmed Deconinck's conviction and sentence, analyzing and rejecting each of his claims. 103 N.E.3d at 722-32. Deconinck did not seek certiorari in the United States Supreme Court. He filed a timely federal habeas petition raising three claims:

1) "The judge committed reversible error by . . . excluding the Fay statement which was critical to the defense and bore persuasive guarantees of trustworthiness; and . . . allowing the assistant district attorney to impeach Fay's grand jury testimony with prior inconsistencies from the Fay . . .";

2) "The trial judge abused her discretion by excluding . . . Fay's statement to police that Russo initiated physical attacks on both Fay and Deconinck close in time to the deadly force; . . . a police report as to a 2009 admission to sufficient facts where Russo assaulted [his girlfriend] and threatened her with a knife; [and] a 2010 violation of a restraining order where Russo initiated unlawful contact with [his girlfriend] and stated he wanted to see her blood; and by threatening to allow the assistant district attorney to call rebuttal witnesses to testify about a bar fight Deconinck engaged in back in 2005"; and

3) His "Due Process right to a fair trial was violated where the judge . . . failed to engage in a recusal analysis despite her longstanding negative opinion of defense counsel[,] and . . . failed to display a proper demeanor and to maintain an aura of impartiality in front of the jury."

Doc. No. 1 at 5-6. The respondent answered the petition, Doc. No. 9, and the Court set a schedule for merits briefing, Doc. No. 11. Thereafter, the Court denied Deconinck's request to appoint counsel but granted a ninety-day extension of his briefing deadline, making his merits brief due December 19, 2019. Doc. No. 15. In November 2019, Deconinck moved to stay these proceedings, citing his lack of counsel and his difficulty preparing a brief. Doc. No. 17. The Court denied his request for a stay but granted a further extension of the briefing schedule, making Deconinck's brief due on January 31, 2020. Doc. No. 18.

The Court has received nothing from Deconinck since its November 21, 2019 order extending the briefing deadlines. As such, the Court has not required the respondents to file a merits brief, and it now considers and resolves Deconinck's claims in light of the his original petition and the arguments presented on his behalf to the SJC on direct appeal.

II. LEGAL STANDARDS

A state prisoner is entitled to habeas relief in federal court only if he has first exhausted his available remedies in state court. 28 U.S.C. § 2254(b); see O'Sullivan v. Boerkel, 526 U.S. 838, 839 (1999); Mele v. Fitchburg Dist. Court, 850 F.2d 817, 819 (1st Cir. 1988). To exhaust a claim, a petitioner must "fairly present" it to the state courts, "thereby alerting [the state courts] to the federal nature of the claim." Baldwin v. Reese, 541 U.S. 27, 29 (2004); see O'Sullivan, 526 U.S. at 848; Coningford v. Rhode Island, 640 F.3d 478, 482 (1st Cir. 2011). Failure to exhaust federal claims in state court may result in procedural default of those claims for habeas purposes. Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991).

Even where a petitioner has fairly presented his federal claims in state court, default occurs when the state court refuses to address such claims on the merits because of "a state-law ground that 'is independent of the federal question and adequate to support the judgment.'" Cone v. Bell, 556 U.S. 449, 465 (2009) (quoting Coleman, 501 U.S. at 729); accord Janosky v. St. Amand, 594 F.3d 39, 44 (1st Cir. 2010); see Martinez v. Ryan, 566 U.S. 1, 9 (2012) ("[A] federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule.").

Massachusetts law imposes "a routinely enforced, consistently applied contemporaneous objection rule." Burks v. Dubois, 55 F.3d 712, 716 (1st Cir. 1995); see Commonwealth v. Lavoie, 981 N.E.2d 192, 197 n.8 (Mass. 2013); Mass. R. Crim. P. 22. The rule is "firmly

4

established and consistently followed," Martinez, 566 U.S. at 9, and the First Circuit repeatedly has held that it constitutes "an independent and adequate state procedural ground" that bars federal habeas review. Janosky, 594 F.3d at 44. Although Massachusetts appellate courts sometimes review claims for "miscarriage of justice" despite a failure to contemporaneously object, such discretionary and limited review "does not in itself indicate that the court has determined to waive" the contemporaneous objection rule and consider the underlying claim on its merits. Tart v. Massachusetts, 949 F.2d 490, 496 (1st Cir. 1991); accord Janosky, 594 F.3d at 44; Burk, 55 F.3d at 726 n.2. Federal courts will infer waiver of such a state procedural rule only if the state court makes it "reasonably clear that its reasons for affirming a conviction rest upon its view of federal law," rather than the relevant state procedural requirement. Doucette v. Vose, 842 F.2d 538, 540 (1st Cir. 1988).

A petitioner may obtain review of defaulted claims only if he can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the[] claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750; accord Martinez, 566 U.S. at 10; Janosky, 594 F.3d at 44. To demonstrate cause sufficient to excuse default, a petitioner must prove "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986); accord Coleman, 501 U.S. at 753. "[I]neffective assistance of counsel, so severe that it violates the Sixth Amendment, may constitute cause to excuse a procedural default," but only if "the petitioner exhausted his ineffective assistance claim in state court." Janosky, 594 F.3d at 44 (citing Murray, 477 U.S. at 488-89).

To show "actual prejudice," a petitioner must demonstrate that the alleged errors "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional

5

dimensions." United States v. Frady, 456 U.S. 152, 168 (1982); accord Ortiz v. Dubois, 19 F.3d 708, 714 (1st Cir. 1994).

If a petitioner seeks to establish a "fundamental miscarriage of justice" as an alternative to showing cause and prejudice, he must demonstrate "actual innocence." See Schlup v. Delo, 513 U.S. 298, 324 (1995); Janosky, 594 F.3d at 46. This requires "new reliable evidence" that would make it more likely than not that "no reasonable juror would find [the petitioner] guilty beyond a reasonable doubt." House v. Bell, 547 U.S. 518, 538 (2006); Schlup, 513 U.S. at 324.

Where a petitioner has exhausted a federal claim, and the state court has resolved it on its merits, the petitioner confronts a second set of hurdles. State court decisions merit substantial deference. Federal district courts may not grant a writ of habeas corpus unless they find that the state court's adjudication of the petitioner's claims "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[,] or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). As the Supreme Court repeatedly has emphasized, this federal habeas corpus standard is "difficult to meet," with the petitioner carrying a heavy burden of proof. Harrington v. Richter, 562 U.S. 86, 102 (2011); accord Cullen v. Pinholster, 563 U.S. 170, 181 (2011); see Burt v. Titlow, 134 S. Ct. 10, 15-16 (2013) (emphasizing the "formidable barrier" faced by federal habeas petitioner where claims already were adjudicated in state court, and limiting relief to cases of "extreme malfunctions" by state criminal justice systems).

If a state court's decision "was reasonable, it cannot be disturbed" on habeas review. Hardy v. Cross, 565 U.S. 65, 72 (2011) (per curiam); see Renico v. Lett, 559 U.S. 766, 779 (2010) (admonishing federal habeas courts not to "second-guess the reasonable decisions of state

courts"). Federal courts must presume that the state court's factual findings are correct, unless the petitioner has rebutted that presumption with clear and convincing evidence. § 2254(e)(1); Miller-El v. Cockrell, 537 U.S. 322, 340-41 (2003); accord Teti v. Bender, 507 F.3d 50, 57 (1st Cir. 2007); see Woods v. Donald, 135 S. Ct. 1372, 1376 (2015) (per curiam) (noting "federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong"); Pike v. Guarino, 492 F.3d 61, 68 (1st Cir. 2007) (discussing the "separate and exacting standard applicable to review of a state court's factual findings").

A state court ruling is "contrary to" clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [its] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000). The state court is not required to cite, or even have an awareness of, governing Supreme Court precedents, "so long as neither the reasoning nor the result of [its] decision contradicts them." Early v. Packer, 537 U.S. 3, 8 (2002). For a habeas petitioner to prevail under this exacting standard, the state court judgment must contradict clearly established holdings of the Supreme Court, not merely law articulated by a lower federal court, and not dicta of any court. Williams, 529 U.S. at 404-05; accord Knowles v. Mirzayance, 556 U.S. 111, 122 (2009).

A state court decision constitutes an "unreasonable application" of Supreme Court precedent if it identifies the correct governing legal rule, but "unreasonably applies it to the facts of the particular state prisoner's case." Williams, 529 U.S. at 407-08. When making the "unreasonable application" inquiry, federal habeas courts must determine "whether the state

7

court's application of clearly established federal law was objectively unreasonable." Id. at 409. An unreasonable application of the correct rule can include the unreasonable extension of that rule to a new context where it should not apply, as well as an unreasonable failure to extend the rule to a new context where it should apply. Id. at 407. It cannot, however, include a decision by a state court not "to apply a specific legal rule that has not been squarely established by [the Supreme Court]." Mirzayance, 556 U.S. at 122. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." Yarborough v. Alvarado, 541 U.S. 652, 664 (2004).

A showing of clear error is not sufficient for a habeas petitioner to establish entitlement to relief. Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003); accord McCambridge v. Hall, 303 F.3d 24, 36-37 (1st Cir. 2002) (en banc). Rather, relief is available only where a state court's "determination was unreasonable – a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007); accord Brown v. Ruane, 630 F.3d 62, 67 (1st Cir. 2011); see also Cavazos v. Smith, 565 U.S. 1, 2 (2011) (per curiam) (emphasizing that a habeas court "may not overturn a state court decision . . . simply because the federal court disagrees with [it]"); Richter, 562 U.S. at 103 (requiring a petitioner to "show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement"). Put another way, relief under § 2254 is warranted only if a petitioner shows that the state court's rejection of his claim was "so offensive to existing precedent, so devoid of record support, or so arbitrary, as to indicate that it is outside the universe of plausible, credible options." Sanna v. Dipaolo, 265 F.3d 1, 13 (1st Cir. 2001) (quotation marks omitted).

None of Deconinck's claims entitles him to relief under these stringent standards.

8

III.  DISCUSSION

   A.  The Fay Statement

In his first claim, Deconinck alleges the trial judge denied him the right to put on a defense by excluding the videotaped statement Fay made when questioned by police hours after the incident, and then abused her discretion in allowing the prosecutor to use portions of that statement to impeach Fay's grand jury testimony. Doc. No. 1 at 5; S.A. at 41-48, 420-22.  He argues "the Fay statement was essential to [his] Due Process right to present the fullness and the richness of his defense to the jury," and was admissible because it "was critical to the defense case and bore persuasive guarantees of trustworthiness."  Doc. No. 1 at 5; accord S.A. at 41-48.[3]

The SJC considered this argument—and viewed the video of the Fay statement, Deconinck, 103 N.E.3d at 723 n.7—but rejected Deconinck's challenge.  Guided largely by state evidentiary law, the SJC reasoned as follows:

> Here, the judge . . . found that the audio-video recorded statement was inadmissible hearsay.  She also noted that, as compared to Fay's grand jury testimony, . . . the recorded statement did not materially advance the defendant's claim of self-defense.  In the recorded statement, Fay said that, after he saw the defendant and the victim facing each other holding knives, he left and went to a bar. . . .
>
> We agree with the judge's conclusion that the statement did not fit within the narrow hearsay exception set forth in Drayton.[4]  Notably, the defendant did not establish that its admission was critical to his case.  By introducing Fay's grand jury testimony, the defendant was able to demonstrate that the victim had been intoxicated and belligerent.  The jury heard that the victim pushed one guest to the floor and that almost all of the guests left the gathering because the victim had been so disruptive and was banging on the table.  After the others left, the victim

---

[3] Though Deconinck cites the Sixth and Fourteenth Amendments as the federal underpinnings of his claim, Doc. No. 1 at 5, it appears to arise under the Due Process Clause of the Fourteenth Amendment.  That is how his counsel presented the claim in state court, see S.A. at 44-45 (citing Chambers v. Mississippi, 410 U.S. 284 (1973), which was resolved on Due Process grounds), and that is how this Court will construe the claim here.

[4] Commonwealth v. Drayton, 38 N.E.3d 247 (Mass. 2015).

9

continued to pound on the kitchen table with his fists, got into multiple heated arguments, and pushed his friends.[5]

In addition, Fay's statement did not bear "persuasive assurances of trustworthiness" . . . . Fay told the police that he had left the trailer as soon as he saw the victim and the defendant holding knives. By contrast, Fay testified before the grand jury that he was present during the knife fight and saw the victim collapse onto the kitchen floor, upon which Fay left the trailer. Fay also testified at the grand jury that he had lied to the police in his initial statement. He explained that, at the time of the recorded statement, "I was basically scared to death. I mean, I didn't want to get hemmed up in something that I had nothing to do with and had no control of. . . . And at that point I was in shock, and what I saw I never saw before in my life. And that was it. I just, I wasn't right in my mind at that point."[6]

Id. at 723-24 (brackets and citations omitted).

The SJC's approval of the trial court's decision regarding the Fay statement was not contrary to, nor an unreasonable application of, Chambers or any other Supreme Court decisions construing the Due Process Clause. Chambers interprets the Due Process clause as forbidding

---

[5] Footnote 7 to the SJC's decision states:
"There are other differences in Fay's recorded statement as compared to his grand jury testimony. For instance, in his statement, Fay told police that he was so frustrated with the victim that, "I finally slammed him. I pushed him. I said, Don't – stop. Go sit down.["] . . . In his grand jury testimony, Fay did not mention that he "slammed" the victim, or that he ordered the victim to sit down. These facts, and some other differences in Fay's description of the events, were not material to the defendant's claim of self-defense.

The defendant makes much of the fact that the judge issued her ruling based on a transcript of Fay's statement, without viewing the audio-video recording. We have watched the recording and conclude that the video portion of the interview did not add any substantive evidence. The recording does show that Fay spoke using many gestures, and demonstrated parts of the altercation, such as the victim pounding on the table; Fay also made pushing motions to indicate the victim pushing others. Fay insisted that he left the trailer as soon as the victim and the defendant armed themselves, and that he did not see the knife fight. As such, Fay did not reenact the stabbing."

[6] Footnote 8 to the SJC's decision states: "Over the defendant's objection, the judge allowed the Commonwealth to impeach Fay's grand jury testimony with portions of the audio-video recording. Thus, the jury heard that, on a prior occasion, Fay had told the police that he left the trailer before the stabbing, and did not see a knife fight. This evidence was admissible to impeach the credibility of a hearsay declarant." (citations omitted)

10

courts from applying the rule against hearsay "mechanistically to defeat the ends of justice." 410 U.S. at 302. Instead, the Constitution compels the admission of evidence that would otherwise be inadmissible hearsay if it is "critical" to the defense and bears "persuasive assurances of trustworthiness." Id. That is precisely the standard applied by the SJC in its analysis of Deconinck's claim.

This Court's review of the record, including complete transcripts of Fay's grand jury testimony and his earlier statement to police, confirms that there is ample support for the SJC's determination. The admission of the grand jury testimony permitted Deconinck to place before the jury the most salient facts supporting his self-defense claim; the earlier statement to police contained little, if anything, directly bearing on that claim, let alone anything rising to the level of "critical to the defense." Moreover, in addition to the reasons cited by the SJC to support its reasonable conclusion that Fay's statement to police did not bear "persuasive assurances of trustworthiness," Fay's grand jury testimony reveals that at the time of the incident, Fay had been drinking vodka and using cocaine. S.A. at 281-82. He consumed more alcohol after he left the scene and before he spoke to police. S.A. at 311-12. This further undermines the perceived reliability of Fay's statement following the incident.

Where the SJC identified the correct constitutional framework, then carefully and reasonably applied it to the circumstances presented, federal habeas relief is not warranted. Deconinck's first claim is meritless.[7]

---

[7] To the extent Deconinck complains that the trial court misapplied state hearsay rules and decisions construing them, including the ruling permitting the use for impeachment purposes of specific statements from Fay's interview with police that were inconsistent with the admitted grand jury testimony, such a claim is not cognizable on federal habeas review. See Swarthout v. Cooke, 562 U.S. 216, 219 (2011) (emphasizing that "federal habeas relief is [not] available for an error of state law"); Deconinck, 103 N.E.3d at 724 n.8 (rejecting challenge to this evidentiary ruling by reference to state law).

B.     First-Aggressor Evidence

Next, Deconinck challenges the trial court's decision precluding him from offering certain evidence bearing on Russo's propensity for initiating violence, which Deconinck had sought to present pursuant to Commonwealth v. Adjutant, 824 N.E.2d 1 (Mass. 2005). Doc. No. 1 at 6. He argues that the trial court abused its discretion by excluding the relevant items on grounds such as hearsay and the availability of a witness, which he says are not part of the analysis called for by the SJC in Adjutant. Id.; S.A. at 48-59, 422-23. In his petition, Deconinck suggests the trial court's misapplication of Adjutant violated his Fifth and Fourteenth Amendment rights.

Under Massachusetts common law, "a defendant may introduce evidence of specific prior acts of violence . . . initiated by the victim" if the case involves "a claim of self-defense" and "the identity of the initial aggressor is in dispute." Adjutant, 824 N.E.2d at 3. In analyzing the application of this rule during Deconinck's trial, the SJC recounted the relevant events as follows:

> Here, in support of his argument that he was forced to stab the victim in self-defense, the defendant filed a motion in limine seeking to admit four prior acts of violence committed by the victim. . . . In addition, the defendant moved to introduce Fay's audio-video recorded statement also for this second purpose . . . . The Commonwealth objected to the admission of the proffered Adjutant evidence . . . .
>
> The judge allowed the defendant's motion to introduce evidence of the victim's 2009 admission to sufficient facts to a charge of assault and battery. In that case, as described in a police report, the victim approached his former girl friend at the restaurant where she worked and slapped her face with the back of his hand. A few minutes later, the victim assaulted her with a knife that he had grabbed from the restaurant kitchen, and threatened to "snap" her neck.
>
> Over the Commonwealth's objection, the judge ruled that the defendant would be able to introduce a certified copy of the admission to sufficient facts. The judge did not allow the defendant to introduce the police report, reasoning that it was inadmissible hearsay and that, in any event, the defendant had the opportunity to introduce this evidence through the testimony of the victim's former girl friend and the court records. When defense counsel argued that calling the former girl friend

12

would be infeasible because she had been hostile and uncooperative with counsel and his investigator, the judge commented, "Just because she's uncooperative with you, doesn't mean you still can't call her to the stand and put her under oath and ask her about that incident." The judge denied the defendant's motion as to the other proffered Adjutant evidence. She found that [a 2010] violation of [a] restraining order was not probative of the victim's aggression and use of a deadly weapon. With respect to Fay's recorded statement, the judge found that it did not qualify as Adjutant evidence because it did not establish that the victim had been the first to use deadly force.

At trial, the defendant decided to forgo introducing Adjutant evidence. . . .[8]

Deconinck, 103 N.E.3d at 725 (brackets omitted).

The SJC then rejected Deconinck's Adjutant claim on its merits, reasoning:

Contrary to the defendant's claim [that the recorded Fay statement was admissible evidence that the victim had been the first aggressor], he was in fact able to, and did, present this evidence to the jury . . . . Fay's testimony, through the grand jury transcript, included his statement that the victim had been drinking vodka and sniffing cocaine.[9] Fay described the victim as "drunk" and "disruptive." Fay testified that . . . the victim, in an intoxicated state, had pushed Fay and another guest without provocation. Fay also testified that the victim had been continuously pounding the kitchen table and that he had fought with the defendant. Fay stated that he had been forced to separate the victim and the defendant three or four times because the victim and the defendant "were arguing back and forth, and they got into a few pushing contests."[10] Thus, there was no abuse of discretion in the judge's decision not to allow the introduction of the audio-video recording of Fay's earlier statement . . . .

. . . Adjutant . . . did not . . . alter the rule against the admission of hearsay evidence. [It] merely permitted the admission of evidence that previously had been deemed irrelevant.

---

[8] Footnote 9 to the SJC's decision states, in part: "Prior to trial, the Commonwealth moved to introduce evidence that, in 2005, the defendant had been the first aggressor in a barroom brawl with an off-duty fire fighter. The judge ruled that if the defendant chose to introduce Adjutant evidence, she would conduct a voir dire of the fire fighter to determine whether the defendant had been the first aggressor in that fight. . . . She requested that defense counsel discuss with the defendant the strategic choice of going forward with the Adjutant evidence and consider the possibility of rebuttal evidence if he chose to do so. . . .'"(citations omitted)

[9] Footnote 10 to the SJC's decision stated, in part: "This testimony was corroborated by the medical evidence."

[10] Footnote 11 to the SJC's decision stated, in part: "During a hearing on the defendant's motion, trial counsel agreed that Fay's grand jury testimony included the Adjutant evidence contained in the audio-video recording of Fay's statement to police."

> . . . Here, . . . the [2009] police report was not critical to the defense because the victim's former girl friend, although apparently hostile to defense counsel, was available to testify to the incident of assault and battery.
>
> Finally, we discern no error in the judge's decision not to allow introduction of the victim's violation of the restraining order. . . . The violation of the restraining order was different in nature from the knife fight. The victim's threats to his former girl friend were made by telephone, and there was no indication that the victim followed through on those threats. On this evidence, the judge did not abuse her discretion in finding that the violation of the restraining order did not tend to show that the victim was the initial aggressor in this incident.

Id. at 726-27 (citations and quotation marks omitted).

The SJC's approval of the manner in which the trial judge assessed and limited the proffered Adjutant evidence—a subject governed entirely by state evidentiary law—was not contrary to, nor an unreasonable application of, the Due Process Clause or any Supreme Court decisions construing it. "[T]he Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules." Marshall v. Lonberger, 459 U.S. 422, 438 n.6 (1983). Rather, "to trigger [federal habeas] relief," where a state court has issued a ruling construing or applying a state evidentiary rule such as the one established by Adjutant, "the state court's application of state law must be 'so arbitrary or capricious as to constitute an independent due process . . . violation.'" Coningford, 640 F.3d at 484 (quoting Lewis v. Jeffers, 497 U.S. 764, 780 (1990)).

Here, the record does not establish that the trial court's rulings regarding Adjutant evidence "so infected [Deconinck's] trial with unfairness as to make the resulting conviction a denial of due process." Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974); see Dowling v. United States, 493 U.S. 342, 352 (1990) (defining "the category of infractions [arising from application of state rules of evidence] that violate fundamental fairness very narrowly"). Deconinck has cited no clearly established federal law or Supreme Court decision that

14

prohibits—or even addresses directly—the admissibility of the sort of evidence at issue here.[11] "The absence of an on-point pronouncement from the Supreme Court leaves hanging by the slimmest of threads [Deconinck's] claim that the state court's [rulings regarding Adjutant] evidence can be deemed an unreasonable application of the broader fair-trial principle." Coningford, 640 F.3d at 485.

In these circumstances, "the state court's approval of the [challenged ruling] in this case . . . was well within the universe of plausible evidentiary rulings. It was, therefore, not so arbitrary or capricious as to work a denial of the petitioner's constitutionally secured fair-trial right." Coningford, 640 F.3d at 485. Accordingly, Deconinck's second claim fails.[12]

C. Trial Court Bias

Finally, invoking the Fifth, Sixth, and Fourteenth Amendments, Deconinck claims that the trial judge denied him due process by failing to consider whether she should recuse herself, and by failing to maintain an appropriate, impartial demeanor in front of the jury. Doc. No. 1 at 6. This claim arises from Deconinck's allegation that the trial judge disliked his lawyer, whom she had held in contempt at the conclusion of a different murder trial years earlier, and his view that animosity between his lawyer and the judge permeated his trial. Id.; S.A. at 59-74.

The SJC began its analysis of this claim by noting that Deconinck had not sought recusal at trial, and that his appeal asked "whether the judge's failure to consider recusal sua sponte deprived him of the right to trial before an impartial tribunal." Deconinck, 103 N.E.3d at 727. Thus, the SJC "consider[ed] this claim to determine whether there was a substantial likelihood of

---

[11] Indeed, his petition in this Court cites no federal cases, and his counseled briefs to the SJC presented his Adjutant claim in terms of state law only.
[12] To the extent Deconinck complains that the trial court erred in its application of Adjutant and state evidentiary law, such a claim is not cognizable here. See note 7, supra.

15

a miscarriage of justice." Id. The SJC then surveyed both the proceedings giving rise to the prior finding of contempt and audio recordings of Deconinck's trial, "including all of the instances in which the defendant claims that the judge 'yelled' at defense counsel," finding "no evidence of bias and no reason that the judge should have, sua sponte, considered recusing herself." Id. at 727-29 & n.12.

In these circumstances, Deconinck's failure to seek recusal or otherwise object to the trial judge's alleged bias during his trial renders any related federal claims procedurally defaulted. See Janosky, 594 F.3d at 44. The SJC's express reference to Deconinck's failure to raise these issues before or during trial and its clear statement that "miscarriage of justice" review applied were accompanied by no language excusing Deconinck's waiver nor otherwise salvaging the claim for purposes of this Court's review; nothing in the SJC's decision supports a finding that it disposed of the claim based on "its view of federal law." Id.; see Doucette, 842 F.2d at 540. So, unless Deconinck can show cause and prejudice for his default or demonstrate actual innocence, he is not entitled to federal review of the defaulted claim.

In his petition, Deconinck does not acknowledge his default, cite any "objective factor external to the defense" which caused it, Murray, 477 U.S. at 488 (emphasis added), or advance another basis upon which it might be excused.[13] His counseled brief to the SJC acknowledged his failure to raise the issue at trial and the possibility that the SJC would deem it waived. S.A. at 62. Deconinck does not allege his trial counsel was ineffective in this or any other regard, nor has he exhausted any ineffectiveness claims in state court. Similarly, he has not shown, and the

---

[13] To the extent Deconinck complains that he lacked the necessary information to assert this claim at trial (e.g., if he was not personally aware of the prior finding of contempt), his trial counsel—the individual subject to the contempt finding—plainly had such information and could have raised in a timely manner the issues Deconinck now expresses.

16

record does not support a finding, that the dynamics of the relationship between the trial judge and his lawyer "infect[ed] his entire trial with error of constitutional dimensions."[14] Frady, 456 U.S. at 168. Finally, Deconinck has not presented "new reliable evidence" of his innocence. Schlup, 513 U.S. at 324. Under these circumstances, there is no basis for excusing his procedural default, leaving his final federal claim outside the bounds of this Court's review.[15]

IV. CONCLUSION

Because his claims are meritless, Deconinck's habeas petition is DENIED.[16]

SO ORDERED.

 /s/ Leo T. Sorokin
United States District Judge

---

[14] The facts recounted by the SJC support its finding that trial judge's conduct in presiding over Deconinck's trial created no risk of a miscarriage of justice, let alone a substantial one.

[15] Deconinck would fare no better after a review of his final claim on its merits. In the circumstances presented here, the SJC's resolution of this claim does not appear to contravene or unreasonably apply any clearly established Supreme Court precedent. See Liteky v. United States, 510 U.S. 540, 555-56 (1994) (explaining "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion," nor do "judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases"); Deconinck, 103 N.E.3d at 728-29 (quoting relevant standards from Liteky).

[16] As "reasonable jurists" could not "debate whether . . . the petition should have been resolved in a different manner," Slack v. McDaniel, 529 U.S. 473, 484 (2000), for the reasons explained above, no certificate of appealability shall issue.